UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:14-cr-00013-MMD-VPC |
| Plaintiff, | ORDER |
| v. | |
| KYLE ARCHIE and LINDA ARCHIE, | |
| Defendants. | |

I.    **SUMMARY**

This Order addresses two remaining issues raised by the pending motions: (1) Defendants Kyle Archie ("Kyle") and Linda Archie's ("Linda") request for joint representation by out-of-state counsel, Robert E. Barnes ("Mr. Barnes"), and local counsel, Craig Denny ("Mr. Denny"); and (2) any potential conflict in Mr. Denny's representation of Defendants and his representation of Reno Rock Transport, LLC ("RRT"). The Court held a hearing on April 13, 2015. (Dkt. no. 49.) The Court also held an *ex parte* sealed hearing where it canvassed Defendants about their decision to pursue joint representation. The simultaneously filed sealed Order references Defendants' statements during this *ex parte* sealed hearing.

II.    **BACKGROUND**

On February 26, 2014, Defendants were indicted on twelve counts of failure to account for and pay over withholding and taxes in violation of 18 U.S.C. § 7202, and aiding and abetting, in violation of 18 U.S.C. § 2. (Dkt. no. 1.) Each count recites the same underlying facts: Kyle was the responsible officer of Reno Rock, Inc. ("RRI"),

GKPA, Inc. and Rockeries, Inc. (collectively "the Entities"); Linda was the bookkeeper for the Entities; Kyle deducted or caused to be deducted taxes, including Federal Insurance Contributions Act ("FICA") taxes, from his employees for certain enumerated quarters; and, with the help of Linda, Kyle allegedly willfully failed to truthfully account for and pay over to the Internal Revenue Services these withheld taxes. (*Id.* at 1-2.)

On April 1, 2014, Kyle appeared for his initial appearance and arraignment with his retained counsel, Steve Wilson. (Dkt. nos. 8, 11.) On April 2, 2014, Linda appeared for her initial appearance and arraignment with her retained counsel, Richard Molezzo. (Dkt. nos. 13, 16.) On September 18, 2014, Mr. Barnes filed a verified petition for permission to appear pro hac vice to represent Kyle. (Dkt. no. 26.) Barnes designated Mr. Wilson as his local counsel. This petition was approved.[1] (Dkt. no. 27.)

On February 24, 2015, Linda filed a motion to substitute Mr. Barnes as her counsel in place of Mr. Molezzo.[2] (Dkt. no. 34.) The government filed an opposition and Mr. Barnes filed a reply. (Dkt. nos. 39, 40.)

A few weeks later, on March 4 and 6, Defendants filed separate motions to substitute Mr. Denny as their counsel in place of their respective counsel, Mr. Molezzo and Mr. Wilson. (Dkt. nos. 37, 38.) In response, the government moved to determine possible disqualification of Mr. Denny because of a potential conflict between Mr. Denny's representation of one or both Defendants and his representation of RRT. (Dkt. no. 43.) Defendants filed a response to this motion. (Dkt. no. 46)

Over a month after Linda filed her motion to substitute Mr. Barnes, on April 8, 2015, Mr. Barnes filed a petition for permission to appear pro hac vice on behalf of Linda, designating Mr. Denny as his local counsel. (Dkt. no. 44.)

///

---

[1]The petition was later amended and approved, and is now subject to the Court's determination as to whether to revoke approval pending further briefing. (Dkt. nos. 28, 30, 49.)

[2]In this motion, Mr. Barnes represented that he is "duly admitted to practice in this District." (Dkt. no. 34.) At the April 13, 2015, hearing, Mr. Barnes admitted he made an administrative mistake in making this erroneous representation.

On April 13, 2015, after hearing arguments on the pending motions, the Court denied Mr. Barnes' petition for permission to appear as pro hac vice on behalf of Linda. (Dkt. no. 49.) While this decision renders moot Linda's motion to substitute Mr. Barnes and the issue of joint representation of Defendants by Mr. Barnes, the Court will address the joint representation request in light of Defendants' motions to substitute Mr. Denny as their counsel.

## III.   DISCUSSION

The Court will first address the issue of joint representation, followed by the issue of Denny's former representation of RRTL.

### A.   Joint Representation

Pursuant to the Sixth Amendment, a criminal defendant has a right to representation free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). This right must be balanced with a criminal defendants' right to select and be represented by his or her preferred attorney. *See Wheat v. United States*, 486 U.S. 153, 159 (1988). The Supreme Court has suggested that in weighing this balance, courts should favor effective advocacy: "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will be inexorably represented by the lawyer whom he prefers." *Id.*

Although joint representation of co-defendants does not necessarily violate the Sixth Amendment in all cases, "a possible conflict [of interest] inheres in almost every instance of multiple representation." *United States v. Allen*, 831 F.2d 1487, 1494 (9th Cir. 1987) (quoting *Culyer v. Sullivan*, 446 U.S. 335, 348 (1980)); *see also Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). A court must therefore "take adequate steps to ascertain whether the risk [of a conflict is] too remote to warrant separate counsel." *Allen*, 831 F.2d at 1494 (citing *Holloway*, 435 U.S. at 484). Generally speaking, an actual conflict exists "when a defendant is placed 'at odds with co-defendants who were

3

in fact more culpable.'" *Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001) (quoting *Allen*, 831 F.2d at 1496)).

"Trial courts presented with a possible conflict have an affirmative duty to protect a defendant's rights . . . which duty arises when the possibility of conflict is brought home to the court." *Allen*, 831 F.2d at 1494 (internal quotation marks and citations omitted).  As the Supreme Court noted in *Wheat*, this duty presents a difficult balance for trial courts. That is, "trial courts confronted with multiple representations face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule." *Wheat*, 486 U.S. at 161. "If a district court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance." *Id.* (citation omitted). On the other hand, "a district court's refusal to accede to the multiple representation" can lead to challenges on appeal as well. *Id.*

In this case, the risk of a conflict is not too remote to warrant separate representation. As alleged in the Indictment, Linda and Kyle do not appear to be indistinguishable in terms of their alleged culpability. The Indictment alleges that Kyle was the "responsible officer" for the Entities while Linda was the bookkeeper. (Dkt. no. 1 at 1.) The Indictment further alleges that Kyle deducted or caused to be deducted from employees' compensation required taxes and, with the help of Linda, willingly failed to truthfully account for or pay over these taxes. These allegations suggest a disparity in Defendants' authority over the Entities and involvement in the charged conduct. The Court also agrees with the government that the circumstances here allow for Defendants to take the obvious defense of shifting the blame on each other — Linda may claim that as the bookkeeper, she acted at Kyle's direction while Kyle may claim he deferred to Linda to collect and pay over the taxes.[3]  (Dkt. no. 39 at 6.)

---

[3] The fact that Kyle informed the Court in the *ex parte* hearing ██████████ ████████████████████ does not eliminate this potential conflict or suggest that the risk of a conflict is remote.

Moreover, the defendant who the government perceives to be less accountable may be able to negotiate a favorable plea that would serve the defendant's best interest. Indeed, it would be unsurprising for the government to make such an offer to plea in this case.  Presented with such an offer, counsel for Defendants would be faced with an actual conflict even if Defendants gave their directive in advance that they do not wish to entertain any such plea offer. This is because defense counsel "has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132, S.Ct. 1399, 1408 (2012). Thus, the risk of conflict is not too remote here due to the perceived differences in Defendants' involvement in the charged offenses.

Further, the Court finds that Defendants have not articulated any real advantage or benefit to joint representation that does not exist if they continue to be represented by separate counsel.  While Defendants articulated a wish to present a unified defense and not to undertake any action that is adverse to each other's interest, having separate counsel does not foreclose or even interfere with the pursuit of those options. In fact, it is not uncommon for defendants represented by separate counsel to present a unified defense. In addition, based on the Court's canvassing of Defendants *ex parte*, the Court is concerned that Defendants' election of joint representation is made in part for reasons of circumstance, as opposed to strategy.[4]

Given the Court's finding that the risk of a conflict is not remote, the Court must next "ascertain with certainty" that Defendants knowingly and intelligently waived their right to be represented by an attorney free from conflict. *See Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (citation omitted). A criminal defendant may waive his or her

---

[4](Defendants' responses to the Court's questions during the *ex parte* sealed hearing is redacted.) Kyle's assertion does not make the possibility of conflict any more remote and does not relieve this Court of its responsibility to ensure Defendants' rights are protected.

right to an attorney free from conflicts so long as the waiver is knowing and intelligent. *Id.* (citation omitted).  A waiver can only be knowing and intelligent where the defendant is sufficiently informed of the consequences of his or her choice. *Id.* (citation omitted). Courts are "required to 'ascertain with certainty' that a defendant knowingly and intelligently waived that right by 'focusing on what the defendant understood.'" *Id.* (citing *Lockhart v. Terhune*, 250 F.3d 1223, 1233 (9th Cir. 2001)). However, a waiver may not be an appropriate solution in all cases, and a trial court may decline a proffer of waiver where an actual conflict is found to exist, or the potential for actual conflict exists. *See Wheat*, 486 U.S. at 162–63 ("[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.")

Defendants submitted written waivers in connection with their request for joint representation. (Dkt. no. 46, Exhs. 2 and 3.) However, the Court is not convinced that Defendants have been sufficiently informed of the consequences of their choice. The signed waiver asked Defendant if they have "sought the advice of separate counsel with respect to whether [they] wish to waive Mr. Denny's potential conflict of interest" and if so, to identify the independent counsel. (Dkt. no. 46-2, ¶ 17; dkt. no. 46-3, ¶ 17.) Defendants did not respond to these two questions. The signed waiver for each Defendant instead indicated that Defendant read, understood and agreed to the waiver. (Dkt. no. 46-2 at 5; dkt. no. 46-3 at 5.)

Based on Defendants' responses to the Court's questions during the *ex parte* hearing and Defendants' signed conflict waiver, the Court cannot "ascertain with certainty" that Defendants' waiver is knowing and intelligent. The Court thus cannot grant Defendants' request for joint representation based on the record before the Court. However, denial is without prejudice to Defendants to bring a renewed motion after

///

Defendants have had the opportunity to consult with independent counsel should Defendants wish to pursue joint representation.

### B.   Conflict in Representation of Defendants and Former Representation of RRT

In its motion, the government asks the Court to determine whether Mr. Denny should be disqualified from representing either one or both Defendants, depending on the Court's decision on the issue of dual representation, because of his representation of RRT.[5] The government did not know whether RRT's relationship with Mr. Denny is that of a current or former client. (Dkt. no. 43 at 6-7.) In response, Mr. Denny clarified that his representation of RRT was limited to a search warrant executed in May 2012 where certain items were seized and a subsequent motion for return of seized property in August 2013. (Dkt. no. 46 at 2.) Mr. Denny represents that he does not currently represent RRT.  Mr. Denny further represents that he has analyzed whether a conflict or potential conflict exists under Nevada Rules of Professional Conduct that would preclude him from representing either Defendant and determines that none exists. Based on Mr. Denny's representation and faced with no conflicting counter evidence, the Court cannot find that Mr. Denny's former representation of RRT poses an actual or potential conflict that would preclude his representation of one of the Defendants. The Court thus grants the government's motion (dkt. no. 43) to determine the possible disqualification of Mr. Denny and finds there is no conflict between Mr. Denny's former representation of RRT and his representation of Defendants in this case.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' motions.

---

[5]The government contends it is not requesting disqualification since Mr. Denny has not yet been substituted in as counsel for either Defendant. (Dkt. no. 43 at 3 n.2.)

The Court finds that the risk of a conflict posed by dual representation is not too remote, and the Court cannot ascertain with certainty that Defendants' waiver is knowing and intelligent. It is therefore ordered that Defendant Linda Archie's motion to substitute Robert Barnes (dkt. no. 34) is denied. It is further ordered that Defendants' motions to substitute Craig Denny (dkt. nos. 37, 38) are denied. Denial of dual representation by Mr. Denny is without prejudice to Defendants to renew their motion if Defendants continue to wish to pursue joint representation after consultation with independent counsel. Any renewed motion must be filed within sixty (60) days of this Order.

It is further ordered that the government's motion to determine possible disqualification of requested substituted local counsel (dkt. no. 43) is granted. The Court finds that based on the representations of Craig Denny and in the absence of contrary evidence, no conflict exists between Mr. Denny's representation of his former client and his representation of Defendants in this case.

DATED THIS 28th day of April 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

8