UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 3:14-cr-00013-MMD-VPC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| KYLE ARCHIE and LINDA ARCHIE, | |
| Defendants. | |

I.    **SUMMARY**

The Court decided to revoke Robert E. Barnes's *pro hac vice* admission due to his apparent lack of candor and loose representations regarding two issues. The Court issued its ruling after reviewing the filed briefs and hearing arguments presented at the April 13, 2015, hearing. At Mr. Barnes's request, the Court agreed to reconsider its decision and permit Mr. Barnes to present further arguments and evidence.  Since then, Mr. Barnes has filed a response and the Government has also filed a response to which Mr. Barnes was given leave to reply. (Dkt. nos. 52, 55, 58.) In addition to these recent filings, the following briefs are pertinent to the issue of revocation of Mr. Barnes's *pro hac vice* admission: Defendant Linda Archie's motion to substitute (dkt. no. 34); the Government's response to motion to substitute (dkt. no. 39); Defendants' reply to the Government's response (dkt. no. 40); memorandum in support of Mr. Barnes's petition (dkt. no. 45); supplement to the Government's motion (dkt. nos. 47, 48); and notice of the Government's correction to the record relating to prior suspension (dkt. no. 50). Having reviewed these briefs, the Court reconsiders its decision to revoke Mr. Barnes's *pro hac vice* admission.

## II.    BACKGROUND

### A.    Procedural History Relating to *Pro Hac Vice* Petition

On February 26, 2014, Defendants Kyle Archie and Linda Archie were indicted on twelve counts of failure to account for and pay over withholding and taxes in violation of 18 U.S.C. § 7202, and aiding and abetting, in violation of 18 U.S.C. § 2. (Dkt. no. 1.) On April 1, 2014, Mr. Archie made his initial appearance with his counsel, Steven Wilson. (Dkt. no 11.) On September 18, 2014, Mr. Barnes submitted his petition for permission to practice *pro hac vice* to represent Mr. Archie ("Petition"). (Dkt. no. 26.) He amended his petition on October 1, 2014 ("Amended Petition"). (Dkt. no. 28.) The Court approved the Petition on September 22, 2015, and the Amended Petition on October 2, 2014. (Dkt. nos. 27, 30.)

On February 24, 2015, Mr. Barnes filed a motion to substitute, proposing to substitute in as counsel for Linda Archie.[1] (Dkt. no. 34.) That motion, along with Defendants' motion to substitute local counsel, were heard by Magistrate Judge Valerie P. Cooke on March 17, 2015. (Dkt. no. 41.) After hearing from the parties, Judge Cooke referred these motions to the undersigned. (*Id.*) The Court set a hearing for April 13, 2015. (Dkt. no. 42.) Several days before the hearing, on April 8, 2015, Mr. Barnes submitted a petition for permission to practice *pro hac vice* to represent Linda Archie. (Dkt. no. 44.)

### B.    Mr. Barnes's Conduct

#### 1.    Erroneous Representations in the Petition

Question no. 5 of the Court's *pro hac vice* petition form ("the Form") provides: "That there are or have been no disciplinary proceedings instituted against petitioner, nor any suspension of any license, certificate or privilege to appear before any judicial, regulatory or administrative body, or any resignation or termination in order to avoid

---

[1]In that motion, Mr. Barnes stated that he was "duly licensed to practice in this District." (Dkt. no. 34 at 2.) Mr. Barnes is not licensed in Nevada. He later explained that the erroneous representation was made due to an "administrative error." (Dkt. no. 51 at 44.)

disciplinary or disbarment proceeding, except as described in detail below[.]" (Dkt. no. 26 at 2.) In the empty box underneath the prompt, Mr. Barnes responded with "none." (*Id.*) The Petition included as an attachment the certificate of standing from the State Bar of California and a letter dated January 8, 2013, from the Supreme Court of Wisconsin Office of the Clerk ("Wisconsin Letter"). (*Id.* at 6-7.) The Wisconsin Letter stated that Mr. Barnes was in "Good Standing," but his "license was administratively suspended on October 31, 2013. for omitting to file a Wisconsin Trust Account Certificate." (*Id.* at 7.)

In response to question no. 8 on the Form, which asks for a list of cases where an applicant has submitted applications to appear *pro hac vice*, Mr. Barnes identified a criminal case in the United States District Court for the District of Montana and indicated that permission to practice was granted. (*Id.* at 3.) Mr. Barnes subsequently corrected his response to question no. 8 in his amended filing ("Amended Filing"), but only *after* the Government's counsel made inquiries about Mr. Barnes's representations. In his corrected response, Mr. Barnes stated that he was admitted to practice in the District of Montana, but the court subsequently revoked his admission "as Mr. Barnes did not timely file an 'acknowledgement and acceptance of his admission.'" (Dkt. no. 28 at 2.)

The Amended Filing also explained an error in Mr. Barnes's response to question no. 5. In the Amended Filing, Mr. Barnes states as follows relating to his Wisconsin Bar license:

> Here, a clear oversight was made. Mr. Barnes's license in Wisconsin has been suspended and he is not an active member at this moment. This is contrary to the petition and must have only happened recently. The exact status is "CLE Suspended" for failing to meet the reporting requirement of CLE credits.

(Dkt.no. 28 at 2.) In an Amended Petition appended to the Amended Filing, Mr. Barnes modified his response to question no. 5 to reflect the suspension of his Wisconsin Bar

///

///

///

3

1    license "for failure to adequately report CLE credits."[2] (Dkt. no. 28-1 at 2.)

2         In a subsequent reply to the Government's response, Mr. Barnes indicated that

3    he had requested to be placed on inactive status with the Wisconsin Bar because he

4    engaged in little legal business in that state. (Dkt. no. 40 at 2.)

5         At the hearing on April 13, 2015, Mr. Barnes indicated that his Wisconsin Bar

6    license had been suspended twice. (Dkt. no. 51 at 21.) According to Mr. Barnes, the first

7    suspension related to his IOLT account, was brief, and occurred "many years ago as far

8    as [he] remembers."[3] (*Id.* at 21-22.) The second suspension involved the filing of a CLE

9    form. (*Id.* at 22.) During the hearing, Mr. Barnes's explanation for why he did not

10   disclose the suspension of his Wisconsin Bar license in his response to question no. 5

11   was that he read the question quickly and made a mistake in not disclosing his

12   Wisconsin Bar license suspension.[4] (Dkt. no. 51 at 19-20.) In his latest reply brief, Mr.

13   Barnes claims that he understood question no. 5's use of the word "suspensions" to

14   reference "disciplinary suspensions."[5] (Dkt. no. 58 at 5.) As it turns out, Mr. Barnes's

15

16   _____

17        [2]The Amended Petition, filed on October 1, 2014, contains the same signature
     and notary as the initial Petition. As Mr. Barnes acknowledged, his staff appended the
18   old signature page to the Amended Petition. (Dkt. no. 52 at 8.)

19        [3]The suspension relating to the failure to file the Wisconsin Trust Account
     Certificate occurred in October 2013, less than a year from the filing of the Petition.
     (Dkt. no. 26 at 7.)

20
          [4]It is difficult to understand how such a mistake could have occurred when Mr.
21   Barnes disclosed the suspension in a corrected petition filed about a week earlier, on
     September 10, 2014, in *Three Rivers Provider Network, Inc. v America's Choice*
22   *Provider Network, Inc.*, no. 2:14-cv-00584-APG-GWF (D. Nev.) ("*Three Rivers*") (dkt.
     no. 10). In his response to question no. 5 of the petition filed in that case, Mr. Barnes
23   attached the Wisconsin Letter and disclosed the suspension of his Wisconsin license as
     follows: "None other than as stated in the Certificate of Good Standing from the State of
24   Wisconsin." (*Three Rivers*, dkt. no. 10 at 2; *id.*, dkt. no. 10-1.) Mr. Barnes contends this
     is evidence that the failure to disclose was not intentional but was due to an
25   "administrative error." (Dkt. no. 51 at 19.) Perhaps. But even in *Three Rivers*, Mr.
     Barnes failed to disclose a more recent suspension in June 2014 relating to his CLE
26   requirements or reference three other suspensions. (Dkt. no. 55-1.)

27        [5]This explanation leads to the further question of why Mr. Barnes responded to
     question no. 5 the way he did in *Three Rivers. See supra* note 4. If Mr. Barnes thought
28   the question only covered disciplinary suspensions, it is not clear why he would respond
     in the affirmative to question no. 5 and attached a copy of the Wisconsin Letter.

1   Wisconsin Bar license had been suspended on three other occasions between 2002
2   and 2006. (Dkt. no. 55-1.)

3                    **2.      Failure to Correct Representation**

4          In the reply in support of Linda Archie's motion to substitute, Mr. Barnes argues
5   that dual representation in tax cases is common. (Dkt. no. 40 at 3.) Mr. Barnes
6   represents that he has participated in multi-family defendant criminal cases and offered
7   two examples of such cases, including "a more recent matter, *United States v. Chang,*
8   *et al,* 3:15-cr-0067-WHO (Dist. of N.D. Ca-San Francisco) ("*Chang*") where the
9   undersigned currently represents both son and mother (conflict waiver pending)." (*Id.* at
10  3.) On April 6, 2015, the court in that case issued an order denying dual representation.
11  (Dkt. no. 48-1.) This decision was brought to the Court's attention by the Government
12  on the morning of the scheduled April 13, 2015, hearing. (Dkt. nos. 47, 48.)

13         At the April 13, 2015, hearing, in response to the Court's question as to why Mr.
14  Barnes did not update the Court on the decision to deny dual representation in *Chang,*
15  Mr. Barnes represented that he did not know the *Chang* decision was cited in his brief.
16  (Dkt. no. 51 at 14-15.)

17                   **C.     Revocation of Pro Hac Vice Admission**

18         On April 13, 2015, after hearing arguments, the Court decided to revoke
19  permission for Mr. Barnes to appear *pro hac vice* on behalf of Mr. Archie. The Court
20  explained its concerns about the multiple erroneous disclosures relating to: (1) the
21  suspension of Mr. Barnes's license to practice in Wisconsin; and (2) Mr. Barnes's failure
22  to supplement his filing to disclose that the court in *Chang* — which was only one of two
23  cases cited to persuade the Court that Mr. Barnes has participated in dual
24  representation in tax-related cases and that the practice is not unusual — had ruled
25  against permitting dual representation. (Dkt. no. 51 at 51-53.) The Court explained that
26  it found Mr. Barnes's failure to supplement to be an attempt to mislead the Court. (*Id.*)
27  ///
28  ///

                                            5

1  Mr. Barnes requested reconsideration, arguing that he was not aware of the

2  possibility that permission to practice *pro hac vice* would be revoked.[6] (*Id.* at 54-59.)

3  The Court granted Mr. Barnes's request and permitted additional briefings. (*Id.*)

4  ## III.   DISCUSSION

5  Mr. Barnes's additional briefs raise two main arguments. First, he challenges the

6  Court's reasoning for revoking his *pro hac vice* admission. Second, he contends that Mr.

7  Archie's Sixth Amendment right to counsel of his choice limits the Court's authority to

8  revoke his *pro hac vice* admission and that his client would thus suffer substantial

9  prejudice. The Court will address these arguments.

10  ### A.   The Court's Decision to Revoke *Pro Hac Vice* Admission

11  In his response to the Court's order revoking his *pro hac vice* admission, Mr.

12  Barnes argues that the Court focused too heavily on his administrative suspensions and

13  improperly faulted him for failing to provide an update on the *Chang* case. (Dkt. no. 52

14  at 11-16.) Mr. Barnes misstates the Court's reasoning for its decision to revoke his *pro*

15  *hac vice* admission. As the Court explained, the Court is concerned about Mr. Barnes's

16  disclosures relating to the suspension of his Wisconsin license and his failure to

17  supplement his filing with the court's decision in *Chang,* which the Court construed as

18  an attempt to mislead the Court. (Dkt. no. 51 at 51-53.) The Court further indicated that

19  it was not comfortable that it "can trust and rely" on Mr. Barnes's representations. (*Id.* at

20  53-54.)

21  Mr. Barnes argues that he should not be denied permission to practice based on

22  a non-disciplinary suspension. This was not the reason for the Court's decision. Mr.

23  Barnes's *pro hac vice* admission would not have been denied because of the

24  suspension of his Wisconsin license. To the contrary, the Court approved the Petition

25  despite the Wisconsin Letter, as well as the Amended Petition, in which Mr. Barnes

26  _____

27  [6]This claim is also questionable. In its response to Linda Archie's motion to substitute, which was filed more than a month before the hearing, the Government requested that the Court consider revoking Mr. Barnes's *pro hac vice* admission. (Dkt.

28  no. 39 at 7-10.)

expressly disclosed the suspension in response to question no. 5.[7] (Dkt. nos. 27, 30.) The reason for the revocation was, in part, Mr. Barnes's multiple inconsistent disclosures about the suspension, including why the latest suspension was not disclosed in response to question no. 5, and the discrepancies in the reasons for the suspension between the Petition and the Amended Petition.  Evidence offered by the Government since the April 13, 2015, hearing shows that Mr. Barnes was again wrong in representing that his Wisconsin Bar license was suspended only twice when the actual number of suspensions was five. (Dkt. no. 55-1.)

Mr. Barnes also argues that he had no obligation to supplement his representation to the Court as to the *Chang* decision, and that requiring such a supplement would compromise his representation of his client.[8] The Court did not fault Mr. Barnes for failing to disclose binding adverse authority; his citation to *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986), relating to the failure to offer non-binding adverse authority, is therefore irrelevant. Rather, Mr. Barnes represented to the Court that he was involved in two other cases, including *Chang,* where he represented multi-family defendants. (Dkt. no. 40 at 3.) While he did note that there was "conflict waiver pending" in that case, he did not state that the issue of dual representation was being presented for consideration by the *Chang* court. Mr. Barnes's citation to *Chang* thus suggested that dual representation was permitted in that case. More importantly, when the *Chang* court denied dual representation by Mr. Barnes, his representation that he was involved in a dual representation in the case was no longer

---

[7]Until the Court reviewed the Wisconsin Letter and the Amended Petition in preparation for the April 13, 2015, hearing, it was not clear that the Wisconsin Letter referenced a different reason for the suspension of Mr. Barnes's Wisconsin license than the reason stated in response to question no. 5 in the Amended Petition.

[8]Mr. Barnes suggests that the Court was under the wrong impression that his reference to *Chang* "was cited as a 'decision' of a court." (Dkt. no. 52 at 15.) Incredibly, Mr. Barnes draws a distinction between the representation he made to Judge Cooke and to the undersigned. In particular, Mr. Barnes contends that he "did not even cite to *Chang* in its brief to the district court in April (having only cited *Chang* to the magistrate in a March brief)." (*Id.*) The Court sees no distinction between a representation in a brief filed with the Court, regardless of whether Mr. Barnes thought that the brief would be reviewed by Judge Cooke or by the undersigned.

true. As the Court observed, Mr. Barnes's explanation at the April 13, 2015, hearing —
that he did not know he cited to *Chang* — is not credible. (Dkt. no. 51 at 53.) Nor is his
current argument for why he failed to supplement.

Having reviewed the relevant filings and the filings submitted after the April 13,
2015, hearing, the Court is still persuaded that Mr. Barnes made erroneous
representations relating to the suspension of his Wisconsin license and that he should
have supplemented his representation to the Court regarding the ruling in *Chang*. At
best, and accepting Mr. Barnes's explanations, these representations were the results
of multiple mistakes, which show serious carelessness. If accepted, Mr. Barnes's
various explanations for these mistakes, including that he did not read question no. 5 on
the Form carefully, or that he did not know he cited to *Chang*, show he either does not
read his filings or does not review his filings before a scheduled hearing. Of course,
counsel's carelessness can interfere with the administration of justice.

### B.    Mr. Archie's Right to His Selected Retained Counsel

Once counsel is admitted to practice *pro hac vice*, "the standards and
procedures" for disqualifying counsel cannot be any "more stringent than those imposed
upon members of the local bar." *United States v. Ries*, 100 F.3d 1469, 1471 (9th Cir.
1996) (quoting *United States v. Collins*, 920 F.2d 619, 626 (10th Cir. 1990), *cert.
denied*, 500 U.S. 920 (1991)). "Although the admission of attorneys *pro hac vice* is
committed to the discretion of the district courts, denial of admission *pro hac vice* in
criminal cases implicates the constitutional right to counsel of choice". *Collins*, 920 F.2d
at 626 (citations omitted).

"A defendant's right to the counsel of his choice includes the right to have an out-
of-state lawyer admitted *pro hac vice.*" *Ries*, 100 F.3d at 1471 (internal quotation marks
and citations omitted).  This "isn't an absolute right; it may be abridged to serve some
compelling purpose." *United States v. Lillie*, 989 F.2d 1054, 1055–56 (9th Cir. 1993),
*overruled on other grounds by United States v. Garrett,* 179 F.3d 1143 (9th Cir. 1999).
The need to ensure "the ethical and orderly administration of justice is one such

purpose." *Ries*, 100 F.3d at 1471; *see Lillie*, 989 F.2d at 1056 (citing "counsel's ethical unfitness" as an example of compelling purpose).

As the Court previously noted, the question of whether to revoke Mr. Barnes's *pro hac vice* admission is a close call. Mr. Barnes's conduct has undermined the Court's trust and could affect the orderly administration of justice.  However, the Court is concerned about the potential prejudice to Mr. Archie should the Court revoke Mr. Barnes's *pro hac vice* admission. Mr. Archie has selected Mr. Barnes as his retained counsel and has expressed confidence in him. Mr. Barnes was granted *pro hac vice* admission to appear on Mr. Archie's behalf in September 2014. Mr. Barnes represents that he has extensive experience with defending criminal tax cases and is one of the few attorneys in the country who have helped their clients win full felony acquittals, dismissal, or reversal on appeal. Mr. Barnes further represents that he and his staff, including a team of forensic accounts, have invested significant time and resources into Mr. Archie's defense.

Revocation of Mr. Barnes's *pro hac vice* admission would necessitate either Mr. Wilson (who has served as local counsel) or new counsel to invest significant time and resources to become familiar with discovery. This would cause Mr. Archie to incur significant added attorneys' fees and would result in further delay of trial. While the Court continues to be concerned about Mr. Barnes's conduct, the Court is more concerned about potential prejudice to Mr. Archie. Balancing these concerns, the Court finds that Mr. Archie's constitutional right to counsel of his choice weighs in favor of reconsideration. The Court will therefore reconsider its decision to revoke Mr. Barnes's *pro hac vice* admission and permit him to continue to represent Mr. Archie.

Mr. Barnes suggests that the Court has not had enough time to measure the quality of his advocacy. The Court will give Mr. Barnes the benefit of the doubt to demonstrate that the series of claimed mistakes will not become a pattern in this case.

///

///

9

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issue raised before the Court.

It is ordered that Mr. Barnes's *pro hac vice* admission will not be revoked and Mr. Barnes will be permitted to continue to represent Mr. Archie.

DATED THIS 19th day of June 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE