UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>KYLE ARCHIE and LINDA ARCHIE,<br><br>Defendants. | Case No. 3:14-cr-00013-MMD-VPC<br><br>ORDER |

## I. SUMMARY

This case involves charges against Defendants Kyle Archie and Linda Archie arising from their alleged failure to account for and pay over employment taxes to the U.S. Internal Revenue Service. The Court will address two motions filed by Defendant Kyle Archie ("Defendant" or "Mr. Archie"): Motion to Dismiss for Outrageous Government Conduct ("Motion to Dismiss") (dkt. no. 86) and Motion to Suppress (dkt. no. 87). The government has filed separate opposition briefs. (Dkt. nos. 91, 93.) Mr. Archie has not replied, and the deadline to file reply briefs has expired.

## II. BACKGROUND

On February 26, 2014, Defendants were indicted on twelve counts of failure to account for and pay over withholding and taxes in violation of 18 U.S.C. § 7202, and aiding and abetting, in violation of 18 U.S.C. § 2. (Dkt. no. 1.) On August 12, 2015, the government filed a superseding indictment, charging Defendants with one count of conspiracy to defraud the United States, and charging only Mr. Archie with twelve

counts of failure to account for and pay over employment taxes in violation of 18 U.S.C. § 7202. (Dkt. no. 68.)

The superseding indictment alleges that Mr. Archie "operated and controlled various business[] entities that engaged in selling and delivering landscape materials and hauling materials" and "a separate business that engaged in the construction and building of rock retaining walls." (*Id.* at 1.) Defendant Linda Archie, Mr. Archie's mother, "acted as the bookkeeper and office manager" of these various business entities. (*Id.* at 2.) The entities identified in the superseding indictment include Reno Rock, Inc. ("RRI"), which incorporated in 2001 and had its status revoked in 2005, GKPA, Inc. ("GKPA"), which incorporated in 2001, and Reno Rock Transport, LLC ("Reno Rock Transport"), which was established in 2009. (*Id.* at 2-3.) In 2005, RRI began operating as GKPA and would often self-identify as "GKPA, Inc. dba Reno Rock, Inc." (*Id.*) "Starting at some time between 2009 and 2010, GKPA began operating under a new name, Reno Rock Transport." (*Id.* at 3.) Mr. Archie was an officer of RRI and GKPA. (*Id.* at 2-3.) The superseding indictment further alleges that Defendants engaged in a conspiracy to avoid paying employment taxes to the IRS from at least 2003 to 2010. (*Id.* at 6-10.) Counts two to thirteen charge Mr. Archie with failing to account for and pay over employment taxes for each quarter of 2008 and 2009 for GKPA, Inc. dba Reno Rock, Inc., and each quarter of 2008 for D. Rockeries, Inc. (*Id.* at 11.)

As part of its investigation, in May 2012, the government obtained a search warrant ("Search Warrant") to search the business premises of RRI, GKPA, D. Rockeries, and Reno Rock Transport — which were located at 770 Security Circle in Reno, Nevada — and to seize certain records of these entities. (Dkt. no. 86-1.) Defendant seeks to suppress evidence obtained pursuant to the Search Warrant. (Dkt. no. 87.)

### III.   MOTION TO DISMISS

Defendant seeks dismissal of the indictment based on the government's allegedly outrageous conduct. Alternatively, even assuming that the government's

conduct does not amount to a due process violation, Defendant urges the Court to exercise its supervisory authority and dismiss the indictment. Defendant offers four reasons to support his request: (1) the government failed to timely release *Brady* and *Giglio* disclosures; (2) the government failed to conduct a conference with Defendant; (3) the government initiated criminal proceedings in retaliation; and (4) the government provided materially false information in support of a search warrant. (Dkt. no. 86.) The government disputes Defendant's contention that there has been inappropriate — let alone outrageous — conduct. The Court agrees with the government.

### A. Standard

"Outrageous government conduct occurs when the actions of law enforcement officers or informants are 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (quoting *United States v. Russell*, 411 U.S. 423, 431-32 (1973)). An allegation of outrageous government conduct is thus "not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed." *United States v. Holler*, 411 F.3d 1061, 1065 (9th Cir. 2005) (quoting *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995)). Dismissal under this "extremely high" standard is appropriate only in "extreme cases in which the government's conduct violates fundamental fairness." *United States v. Pedrin*, 797 F.3d 792, 795 (9th Cir. 2015) (quoting *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991); *United States v. Gurolla*, 333 F.2d 944, 950 (9th Cir. 2003)).

Even absent outrageous government conduct, courts retain supervisory powers to dismiss indictments in order "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991); *see also United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008) (en banc) (noting that the court's

supervisory powers are not necessarily limited to these three scenarios). To warrant dismissal under the court's supervisory powers, prosecutorial misconduct must be "flagrant" and "must cause substantial prejudice to defendants." *Barrera-Moreno*, 951 F.2d at 1093. Additionally, "[n]o lesser remedial action" may be available to address the misconduct. *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (quoting *Barrera-Moreno*, 951 F.2d at 1092). And unless a constitutional or statutory violation has occurred, courts lack the authority to supervise out-of-court executive actions. *Barrera-Moreno*, 951 F.2d at 1093.

### B.   Untimely Disclosure of *Brady* and *Giglio* Evidence

Defendant contends that the government violated his due process rights by failing to timely disclose material and exculpatory evidence. (Dkt. no. 86 at 7-8.) He accuses the government of withholding evidence obtained during discovery and through the Search Warrant as a means of obtaining leverage in plea negotiations. (*Id.*) He further argues that the withheld evidence was only disclosed after Defendant's current counsel, Mr. Barnes, entered the case.[1] (*Id.*) The government argues that Defendant cannot show that the government failed to timely disclose *Brady* or *Giglio* materials; instead, most of the materials were already in Defendant's possession and Defendant suffered no prejudice as a result of the government's alleged late disclosures.[2]

The law as established in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny compels the prosecution to

---

[1] Evidence that was allegedly intentionally withheld "contained a great deal of Reno Rock Transport material, information from CPA Randy Barton regarding the family business, exculpatory information including, payroll logs, credit applications, drivers daily logs and vehicle registration information and other materials showing ownership and control of assets." (Dkt. no. 86 at 8.)

[2] The government asserts as its first argument that it is not legally required to disclose *Brady* or *Giglio* materials before making a plea offer. The government points out that in *United States v. Ruiz*, 536 U.S. 622, 629 (2002), the Supreme Court held that the Constitution does not require prosecutors to share impeachment evidence with a defendant before presenting a plea offer. (Dkt. no. 91 at 10.) But as the government acknowledges, *Ruiz* does not clearly extend this holding to exculpatory evidence. (*Id.* at 10.) The Court need not resolve this legal issue because it finds that the facts do not support Defendant's argument of outrageous government conduct.

4

produce material, exculpatory, and impeachment evidence regardless of whether the defendant requested it. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999). Defendant does not claim that the government has not complied with its disclosure obligations, but only that the government failed to timely comply before trying to force a plea deal. But Defendant fails to offer any evidence to support his contention that the government intentionally delayed disclosing *Brady* and *Giglio* materials to obtain leverage in plea negotiations.

Defendant has not provided any timeline of events leading up to the government's plea offer or the government's subsequent discovery disclosures. The government did explain the timeline, and this undisputed account[3] of the government's discovery disclosures does not support Defendant's claim of intentional withholding of evidence to force a plea deal. The government stated that it provided two discovery disclosures on April 30, 2014, and May 15, 2014, and counsel believed that at the time, the government had disclosed all discovery that had been provided by IRS-CID. (Dkt. no. 91 at 6.) In July 2014, the government presented an informal plea offer and ultimately extended the deadline for Defendant's response to early September. (*Id.*; dkt no. 91-1 at 63-64.) After Mr. Barnes appeared in the case, in response to his request, the government confirmed that all discovery received up to that point had been produced. (Dkt. no. 91 at 6; dkt. no. 91-1 at 66, 68.) However, the government's counsel later learned that "an internal error resulted in a large block of documents (approximately 30,000) not being produced" and immediately worked to produce the discovery and to seek an extension of the trial and deadlines, which the Court granted. (Dkt. no. 91 at 6; dkt. nos. 32, 33.) These additional documents consisted mainly of documents that had been obtained through the Search Warrant and had been subsequently returned to Gary Archie, Sr. in September 2013. (Dkt. no. 91 at 7; dkt. no. 91-2 at 63-65; dkt no. 91-1 at 18, ¶ 63.) The government has since produced additional

---

[3]Defendant did not file a reply brief to respond to the government's timeline or explanation.

5

discovery. (Dkt. no. 91 at 7.) Even in light of the government's inadvertent failure to produce a block of documents — which had already been returned to Gary Archie, Sr. — Defendant has not offered any evidence to support his claim that the government failed to timely disclose evidence to force him to accept its plea offer.

### C. Failure to Conduct a Conference

Defendant argues that the IRS failed to offer him his right to a conference, which he requested, and to gather all pertinent evidence through procedurally proper means before proceeding with criminal charges and making recommendations to the Department of Justice to prosecute. (Dkt. no. 86 at 8-10.) Defendant does not explain what pertinent evidence should have been gathered. This is not a case in which the government appears to have rushed to initiate criminal proceedings. Instead, the government offers evidence to show that the IRS-CID began to investigate Defendant's purported failure to pay employment taxes in 2010, and the investigation involved interviews with Defendant, former employees of RRI, Defendant's business partner in D. Rockeries, the CPA who performed accounting services for Defendant's business entities, and a review of corporate and tax filings of Defendant's entities. (*See* dkt. no. 86-1.)

Defendant relies on provisions from the Internal Revenue Manual to argue that taxpayers such as Defendant are entitled to conferences both at the IRS and the Tax Division of the DOJ. (Dkt. no 86 at 8-9.) He argues that the conference rights conform to constitutional due process requirements. The government counters that no such conference right exists. The government cites to a provision of the Internal Revenue Manual ("IRM") that states: "While a taxpayer conference is not a matter of right, an invitation for a conference will be extended unless it is concluded that offering a conference would serve no purpose."[4] (Dkt. no. 91 at 14 (citing IRM § 38.2.1.4.2

---

[4] The government also argues that Defendant was given a conference with the Tax Division of the DOJ in August 2013. (Dkt. no. 91 at 5, 15.) However, the government did not cite to any record to support this contention and the Court did not see any supporting evidence in the exhibits offered in support of the government's opposition brief.

6

(August 11, 2004)).) The DOJ Tax Division Directive No. 86-58, which Defendant relies upon, similarly states that "there is no right to a conference." U.S. Dep't of Justice Tax Div. Directive No. 86-58 (May 14, 1986).

The Court agrees with the government that the IRM and DOJ Tax Division Directive do not provide a taxpayer with an absolute right to a conference before the initiation of criminal proceedings. However, even accepting Defendant's contention that the agencies' internal manuals extend such an absolute right, or that if the right is not absolute, Defendant was wrongfully denied the right to a conference, the denial of a conference does not give rise to due process violations. "A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *United States v. Caceres*, 440 U.S. 741, 749 (1979) (finding that neither the Constitution nor any federal statute required an agency to adopt and follow procedures before recording conversations with the consent of one of the conversants). Defendant fails to cite to any federal statute that confers a taxpayer with a right to a conference before the initiation of criminal proceedings. Nor does Defendant contend that the right to a conference is constitutionally mandated. Moreover, as the Ninth Circuit Court of Appeals has found, "[t]he Internal Revenue Manual does not have the force of law and does not confer rights on taxpayers." *Fargo v. Comm'r of Internal Revenue*, 447 F.3d 706, 713 (9th Cir. 2006).

Defendant relies on two decisions — *McNabb v. United States*, 318 U.S. 332 (1943), and *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970) — to make the general assertion that the protection afforded by the conference right under the IRM and the DOJ Directive "conforms to the due process requirements of Constitutional restraints on the criminal process." (Dkt. no. 86 at 9.) In *McNabb,* the Supreme Court addressed the admissibility of confessions given during several custodial interrogations. 318 U.S. at 339-47. The Court found that such evidence should have been excluded because officers of the Alcohol Tax Unit of the Bureau of Internal Revenue had obtained the confessions in violation of federal statutes that required arresting officers to immediately

bring the detainee before the nearest judicial officer or committing officer. *Id.* at 342-43. *McNabb* is clearly distinguishable because the conduct of the officers was found to be in violation of federal law, whereas here, Defendant does not contend that the failure to offer him a conference violates any federal statute. And in *United States v. Irvine*, 699 F.2d 43, 46 (1st Cir. 1983), the First Circuit acknowledged that the approach adopted in *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970) — suppression of evidence obtained by the IRS in violation of the agency's warning requirement relating to the criminal nature of the investigation — "is no longer good law." *Irvine*, 699 F.2d at 46. Neither of Defendant's cited cases is persuasive. Defendant has not shown that the government's failure to conduct a conference constitutes outrageous behavior, or necessitates dismissal under this Court's supervisory authority.

### D. Improper Initiation of Criminal Proceedings

Defendant cites to the IRM and the United States Attorneys' Manual to support his contention that these agencies must pursue all available means of civil investigation before initiating a criminal prosecution. Defendant claims that the government retaliated against him by pursuing a criminal prosecution rather than a civil investigation after he requested legal representation. But even Defendant concedes that he "can only infer that the IRS retaliated against" him for exercising his rights to legal representation. (Dkt. no. 86 at 12.) He offers no evidence that improper retaliation was a motive. Moreover, as the government counters, the government "retains 'broad discretion' as to whom to prosecute." (Dkt. no. 91 at 16 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)).)

The Court agrees with the government. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Wayte*, 470 U.S. at 607 (alteration in original) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). This prosecutorial discretion, however, is not "unfettered" and the decision to prosecute may not be

8

"deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quoting *Bordenkircher*, 434 U.S. at 364). Because Defendant's claim of retaliation for his exercise of his right to representation during the civil investigation process is admittedly premised on his own inference, Defendant has not offered any evidence suggesting an arbitrary classification or other equal protection concern. The Court will not dismiss the indictment on this basis.

### E.  Submission of False Information in Search Warrant

Finally, Defendant argues that dismissal is warranted because the Affidavit of Special Agent David Taylor ("Affidavit") offered in support of the Search Warrant contained material false statements that tainted the probable cause analysis.[5] The claimed false statements are: (1) the Affidavit incorrectly assumes that Reno Rock Transport, Reno Rock, and GKPA are "effectively one in the same" and refers to those entities interchangeably; (2) the Affidavit "mischaracterizes the roles of certain individuals in the various entities;" and (3) the Affidavit "contains false information about employee hours, wages, overtime, tax implications as well as complaints with the Nevada Labor Board."[6] (Dkt. no. 86 at 16-17.) The government responds that

///

---

[5] As with his contention that the government should have exhausted all civil remedies first, Defendant also argues that the government should have exhausted other, less intrusive means available before seeking a search warrant. (Dkt. no. 86 at 16, 18.) But this issue is part of the inquiry that the Magistrate Judge would have considered in examining whether probable cause existed to support the warrant application. The Affidavit described the information obtained as part of Agent Taylor's investigation to demonstrate probable cause, including corporate information from the Nevada Secretary of State, records from Reno Rock Transport's accountant, and interviews with former employees of Reno Rock. (Dkt. no. 86-1 at 10-15.) This description indicates that Agent Taylor carried out less intrusive investigatory tactics before seeking the Search Warrant. Defendant also suggests that the Search Warrant was not reviewed by any supervisory authority. Agent Taylor's declaration explained that the Search Warrant was appropriately reviewed by supervisory employees. (Dkt. no 91-1 at 16, ¶ 53.) Defendant has not offered evidence to rebut Agent Taylor's assertion.

[6] The Affidavit states that one RRI employee indicated that "multiple employees filed complaints with the Nevada Labor Board" about an alleged failure to pay the required overtime rate, but Agent Taylor verified that no such complaints were filed with that agency. (Dkt. no. 86-1 at 13-14, ¶¶ 22-23.) The U.S. Department of Labor had, however, investigated RRI relating to that practice. (*Id.*)

9

Defendant lacks standing to challenge the Search Warrant, and that the Affidavit did not contain any false information.

Even assuming, without deciding, that Defendant has standing to challenge the Search Warrant, Defendant has failed to demonstrate that the Affidavit contains false information. First and foremost, Defendant offers no evidence to support his contentions that certain information in the Affidavit is false. Nor does Defendant specify whether any information that was available to Agent Taylor at the time that he executed the Affidavit would raise doubts as to the information contained in the Affidavit. The government offers Agent Taylor's declaration, in which he affirmed that he "believed that at the time the application was submitted to the Court that all of the information provided in the application for the search warrant and the incorporated attachments were true and correct." (Dkt. no. 91-1 at 5.)

Moreover, having examined the Affidavit and the evidence offered in support of the government's opposition, the Court agrees with the government that the Affidavit does not contain false information. The Affidavit does not treat all of the business entities as one and the same. In fact, in the Affidavit, Agent Taylor identified the various business entities associated with Defendants and stated his belief that these entities conducted business at the search location. (Dkt. no. 86-1 ¶¶ 6, 9-16, 37.) Next, Defendant disputes the government's evidence as to the relationship among the various Reno Rock entities, Linda Archie's role in the entities, and compensation for employees of the various Reno Rock entities. However, the fact that Defendant disagrees with the government's evidence, without more, is not enough to show that the government's information is false. For example, Defendant contends that the Affidavit falsely identified Linda Archie's role in the entities because she was "never an employee of Reno Rock, Inc. (GKPA) and did not do the bookkeeping, billing, and payroll for that entity" but instead "only volunteered to help her son with adding information into the computers for Reno Rock, Inc. (GKPA)." (Dkt. no. 86 at 16.) This may be true, but the information available to Agent Taylor, based on witness interviews, was that Linda Archie was the

bookkeeper for RRI/GKPA, Reno Rock Transport, and D. Rockeries. (Dkt. no. 91-1 at 8, ¶ 21; dkt. no. 86-1 ¶ 37; *see* dkt no. 91 at 22.) The Affidavit also stated that Linda Archie reported wages and withholdings from GKPA on her personal tax returns. (Dkt. no. 86-1 ¶ 42.) As another example, Defendant claims that the Affidavit falsely asserts that 941 forms were not filed for Reno Rock Transport for cash wages because wage payments were never made in cash. (Dkt. no. 86 at 17.) Again, Defendant may dispute that employees of entities under his control were compensated in cash, but the Affidavit summarizes interviews with former employees who claimed that their wages had been paid in cash by RRI (dkt. no. 86-1 ¶¶ 25-27) and explains the basis for the statement that employees of Reno Rock Transport were paid overtime in cash (*id.* ¶¶ 28-30).

In sum, the Court finds that Defendant fails to show the Affidavit contains false information. Nor has Defendant demonstrated that the government engaged in outrageous conduct, or exhibited other behavior that warrants the Court's exercise of its supervisory authority,

## IV. MOTION TO SUPPRESS

Defendant seeks to suppress evidence obtained pursuant to the Search Warrant based on the contention that the IRS intentionally offered materially false information in Agent Taylor's Affidavit. (Dkt. no. 87 at 2-3.) The government argues that Defendant lacks standing and, moreover, cannot satisfy the requirements for overturning the Magistrate Judge's finding of probable cause in issuing the Search Warrant. Even assuming that Defendant can show constitutional standing, he has not established that false statements were made in the Affidavit or that the Affidavit cannot support the Magistrate Judge's finding of probable cause.

In *Franks v. Delaware,* 438 U.S 154 (1978), the Supreme Court established a two-prong test for overturning a judicial officer's probable cause finding. First, there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. Second, a defendant is entitled to an evidentiary hearing on the validity of the affidavit only if he can make a "substantial preliminary showing" that (1) the affidavit

contains intentionally or recklessly false statements or misleading omissions and (2) the affidavit could not support a finding of probable cause without the false information or with the misleading omissions. *Id.* at 155-56.

The Ninth Circuit has articulated five requirements that a defendant must satisfy to warrant a *Franks* hearing:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause.

*United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (quoting *United States v. DiCesare*, 765 F.2d 890, 894-95 (9th Cir. 1985)). In other words, a defendant must show that the affidavit could not support a finding of probable cause even if it were "purged of [its] falsities and supplemented by the omissions." *See United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985) (citing *Franks*, 438 U.S at 171-72).

A judge's probable cause determination is accorded "significant deference," *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), and will be overturned only if it is "clearly erroneous." *Stanert*, 762 F.2d at 779. In making this determination, the court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *Stanert*, 762 F.2d at 778. The duty of a reviewing court is to ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Defendant has not satisfied any aspect of the five-factor test required to warrant a *Franks* hearing. Defendant does not identify any specific false statement in the Affidavit. Instead, Defendant offers a list of general examples of false representations, some of which are similar to, or a variation of, the examples offered in support of the Motion to Dismiss: intentional use of the name "Reno Rock" to describe RRI and Reno Rock Transport and misrepresentation of their operations; and misrepresentation as to

positions within the companies, particularly with respect to Linda Archie. (Dkt. no. 87 at 2-3, 6.) Other examples were not advanced in the Motion to Dismiss, including the mischaracterization of "transfers as loans between companies;" false representations as to crucial dates and "assets purchases;" and false representations about when and how the investigation began. (*Id.*)

These examples do not require suppression. First, as discussed above, Defendant has not demonstrated that the examples of misrepresentations offered in the Motion to Dismiss represent false statements. (*See* discussion *supra* Section III.E.) Of the additional examples identified only in the Motion to Suppress, the Court agrees with the government that the Affidavit does not make representations about "transfers as loans between [the] companies" or false representations about "crucial dates and 'asset purchases.'" (Dkt. no. 87 at 2-3; *see* dkt. no. 91-1 at 14-15.) Finally, Defendant raised an additional challenge to Agent Taylor's statement as to how the investigation began. (Dkt. no. 87 at 6.) Agent Taylor stated in his Affidavit that "[t]he present investigation was initiated because of information derived through the Combined Annual Wage Report program (CAWR)." (Dkt. no. 87-1 ¶ 7.) He also stated that "the information contained in this affidavit is based on an ongoing IRS-CID investigation that began in the fall of 2010." (*Id.* ¶ 5.) Defendant argues that these representations are false, insisting that IRS agents knew that RRI was a separate legal entity from Reno Rock Transport because RRI was "identified as a suspect entity as early as December of 2007," and because RRI was notified of its payroll tax deficiencies in January 2009. (Dkt. no. 87 at 6.) But, as noted above, the Affidavit does not present RRI and Reno Rock Transport as the same entity or disregard their corporate statuses. (*See* discussion *supra* Section III.E.)

Moreover, even accepting Defendant's contention that Agent Taylor made misrepresentations about the relationship among the various Reno Rock entities, Linda Archie's position, transfers and loans between companies, "internal operations" of RRI and GKPA, or "crucial dates" and "asset purchases" (dkt. no. 87 at 2-3, 6), Defendant

13

has not shown how these misrepresentations would affect the Magistrate Judge's probable cause determination. "The probable cause standard for a search warrant is whether, based on common sense considerations, there was 'a fair probability that contraband or evidence of a crime would be found in a particular place.'" *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014) (alteration omitted) (quoting *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992)). Evaluating the existence of probable cause is "a common sense determination." *Id.* (quoting *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997)).

Agent Taylor represented that he believes that probable cause exists to show that (1) Defendants have violated 26 U.S.C. § 7202 for willful failure to collect and pay over taxes between 2003 and the first quarter of 2011, and (2) Defendants have violated 18 U.S.C. § 287 for filing false claims by presenting false claims against the government for tax years 2006 through 2008. (Dkt. no. 87-1 ¶¶ 6, 43.) The general examples of alleged misrepresentations cited in Defendant's Motion to Suppress, even if purged from the Affidavit, do not undermine the representation that evidence of the two identified crimes would be found on the business premises. Defendant has not established that the Affidavit could not support the Magistrate Judge's finding of probable cause even if it were purged of these alleged misrepresentations.

## V.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendant's Motion to Dismiss and Motion to Suppress.

It is therefore ordered that Defendant's Motion to Dismiss for Outrageous Government Conduct (dkt. no. 86) and Motion to Suppress (dkt. no. 87) are denied.

DATED THIS 28th day of January 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

14